UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| RANBURN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-088 JD |
| | ) |
| ARGONAUT INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

This is an insurance dispute over coverage for ongoing environmental remediation at the plaintiff's property. In 2009, plaintiff Ranburn Corporation was ordered to investigate and remediate environmental contamination at the site of a dry cleaning business it formerly operated. It sought coverage for that work under a number of insurance policies, and its insurers—each of which are defendants in this action—agreed to defend and indemnify Ranburn in that matter, subject to reservations of rights. That arrangement continued for a number of years. In early 2016, the insurers withdrew the reservations of rights and agreed to fully defend and indemnify Ranburn, meaning, they represent, the site in question will be cleaned up and the environmental matter will be resolved at no cost to Ranburn.

The insurers also insisted, however, on using a different environmental contractor than the one that had been performing the work over the preceding years.[1] Ranburn objects to this switch, arguing that changing contractors at this point could cause delays that would subject it to

---

[1] The insurers also initially sought to use different counsel to represent Ranburn in the environmental matter, but have since agreed to keep Ranburn's existing counsel (different counsel than are representing Ranburn in this coverage case), so that issue is no longer subject to the motion for a preliminary injunction.

penalties from the Indiana Department of Environmental Management and cause it to lose credibility and goodwill with that agency. It thus filed this action and has moved for a preliminary injunction.[2] In the meantime, Ranburn's existing environmental contractor has continued performing work at the site at Ranburn's direction and expense. In its motion for a preliminary injunction, Ranburn seeks an injunction requiring the insurers to continue paying Ranburn's existing contractor throughout the pendency of this action, and to reimburse Ranburn for the remediation expenses it has paid on its own thus far.

"'[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)). A party seeking a preliminary injunction bears the burden of demonstrating that (1) absent a preliminary injunction, it will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) its claim has a reasonable likelihood of success on the merits. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015). A failure to satisfy any of those elements requires that the motion be denied. *Girl Scouts*, 549 F.3d at 1086. If those elements are met, the Court weighs the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the Court were to grant the requested relief, using a sliding scale based on the parties' likelihood of success on the merits. *Id.* The Court also considers the public interest, including the effects of the relief on non-parties. *Id.*

Here, the Court finds that a preliminary injunction is not warranted, as Ranburn has failed to demonstrate that, without an injunction, it will suffer irreparable harm for which monetary

---

[2] The parties have each stipulated to resolving this motion on the written submissions.

relief would be inadequate. Ranburn's argument on this issue can be summarized by the following statement from its brief:

> If . . . the Court denies Ranburn's requested injunction, the Insurers will stop paying [Ranburn's existing consultant's] bills, and Ranburn will be forced to choose between paying its environmental consultant out of its own pocket—in spite of the Insurers' duty to defend—or starting over with a new environmental consultant not of its own choosing and with whom it has prior negative history.

[DE 8 p. 20]. All of the irreparable harm that Ranburn cites is predicated on its taking the second option—agreeing to use the insurers' preferred contractor—which it argues will delay the remediation, expose it to sanctions by the state agency, and damage its credibility. But by Ranburn's own admission, it can avoid that harm by continuing to pay its existing contractor during the pendency of the litigation. By taking that option, as it has already been doing, Ranburn will suffer no irreparable harm that cannot be remedied by legal relief: if Ranburn prevails in this litigation, the insurers can be ordered to reimburse it for all of the expenses it incurs, which will fully remedy this harm.[3] Ranburn's request for reimbursement of expenses it has *already* incurred [DE 47 p. 3–4] presents an even clearer case. That is purely legal relief, and Ranburn has offered no reason why it must receive that relief now instead of after a final judgment.

There are some circumstances in which the availability of monetary damages would not preclude preliminary relief. For example, if having to wait for a final judgment to receive the

---

[3] Ranburn does not claim that the insurers or their preferred contractor are interfering with Ranburn's or its existing contractor's remediation efforts or their relationship with IDEM. The insurers' contractor has not yet received access to the property, and has only performed a preliminary investigation based on publicly available records. Though Ranburn indicates that the insurers' preferred contractor previously contacted IDEM and represented it was the new contractor on the project, Ranburn does not suggest that there is any ongoing confusion or interference that would justify prospective relief. Its request is only that the insurers be made to pay for its contractor. [DE 48 p. 2 ("Ranburn submits that the Court should direct the insurers in this case to continue paying Ranburn's defense team, including its environmental consultant, until the Court has an opportunity to make a final ruling on the merits.")].

damages would force the plaintiff into insolvency in the interim, a preliminary injunction can be justified.[4] *E.g.*, *Girl Scouts*, 549 F.3d at 1089 (finding irreparable harm where the defendant's conduct, if not enjoined, "would impose severe financial stress on [the plaintiff] that could ultimately force [the plaintiff] into insolvency"). Ranburn does not claim that it will be unable to pay the remediation expenses pending a final decision, though; it doesn't think it should have to do so, but Ranburn's belief that its insurers are violating their contractual duties does not transform this into irreparable harm. *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703–04 (7th Cir. 2005) ("An injury is irreparable for purposes of granting preliminary injunctive relief only if it cannot be remedied through a monetary award after trial. *See Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 296 (7th Cir.1997). Thus, even repeated and ongoing violations of a CBA do not warrant a preliminary injunction if each violation may be remedied by a monetary award."). In addition, Ranburn has already filed a motion for summary judgment, so a final resolution of this issue may not be far off. Therefore, the Court finds that Ranburn has failed to show that it will face irreparable harm for which legal relief will be inadequate unless the Court grants an injunction.

Accordingly, Ranburn is not entitled to a preliminary injunction, so its motion for a preliminary injunction [DE 7] is DENIED.

SO ORDERED.

ENTERED: April 11, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[4] Monetary damages can also be inadequate if they will be too difficult to calculate, *Roland*, 749 F.2d at 386, but there is no indication that will be the case here, as Ranburn should be able to identify what amounts it paid its contractor.