**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**LAFAYETTE DIVISION**

|  |  |
|---|---|
| RANBURN CORPORATION d/b/a RANBURN CLEANERS,<br><br>    Plaintiff,<br><br>  vs.<br><br>ARGONAUT INSURANCE COMPANY, ARGONAUT GREAT CENTRAL INSURANCE COMPANY, NATIONAL FIRE AND INDEMNITY EXCHANGE, MERIDIAN MUTUAL INSURANCE COMPANIES n/k/a STATE AUTO INSURANCE COMPANIES,<br><br>    Defendants. | NO. 4:16-CV-00088 |

**OPINION AND ORDER**

This matter is before the Court on Defendant Ranburn Corporation d/b/a Ranburn Cleaners' ("Ranburn") Motion for Partial Summary Judgment, filed on March 29, 2017 (DE #71); Defendant Meridian Mutual Insurance Companies', n/k/a State Auto Insurance Companies ("State Auto"), Cross-Motion for Partial Summary Judgment, filed on May 26, 2017 (DE #90); Defendant Argonaut Great Central Insurance Company's ("AGCIC") Cross-Motion for Partial Summary Judgment, filed on May 26, 2017 (DE #93); Defendant/Counter-Claimant National Fire and Indemnity Exchange's

("NIE") Cross-Motion for Partial Summary Judgment, filed on May 26, 2017 (DE #94). For the reasons set forth below, Ranburn's motion for partial summary judgment (DE #71) is **DENIED** and State Auto's, AGCIC's, and NIE's cross-motions for partial summary judgment (DE #90, DE #93, and DE #94) are **GRANTED**. The Clerk of the Court is **DIRECTED** to enter a **DECLARATORY JUDGMENT** in favor of defendants AGCIC, NIE and State Auto declaring that AGCIC, NIE and State Auto have the right to select and retain the environmental consultant to assist in the defense of the underlying claim brought by the Indiana Department of Environmental Management against Ranburn and conduct the response action at no cost to Ranburn.

BACKGROUND

Ranburn filed this suit against the defendants AGCIC, NIE, and State Auto (together, "the Insurers") to resolve a dispute as to who possesses the right to select the environmental consultant to assist in the defense of an underlying environmental claim brought by the Indiana Department of Environmental Management ("IDEM") against Ranburn. Ranburn moves for partial summary judgment on the issue of whether the Insurers waived or otherwise forfeited their right to select Ranburn's defense team, including the environmental consultant. Each of the Insurers filed cross-motions for partial summary judgment on this issue. The motions have been fully brief and are ripe for review.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). The party with the burden of proof on an issue can obtain a summary judgment "only where the evidence is so one-

sided that it points inescapably" in the movant's favor, and "every reasonable jury" would decide that the movant has met its burden of proof. *Thorne v. Member Select Ins. Co.,* 899 F. Supp. 2d 820, 824 (N.D. Ind. 2012) (citations omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). "[W]hen cross-motions for summary judgment are filed, the [c]ourt must take a dual perspective: [e]ach movant has the burden of establishing the absence of any genuine issue of material fact on its own motion." *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002) (citation and internal quotation marks omitted).

FACTS

The Court finds the following undisputed facts to be supported by admissible evidence in the record:

Ranburn formerly operated the Ranburn Laundry and Cleaners facility located at 3933 Cleveland Street, Gary, Indiana (the "Site"). NIE issued insurance policies to Ranburn for the period of March 1, 1982, through March 1, 1988. (DE #92-3, ¶2.) State Auto issued insurance policies to Ranburn for the period of March 1, 1992, through March 1, 2001. (DE #92-4, ¶3.) AGCIC issued primary insurance policies to Ranburn for the period of December 27, 2003, through December 27, 2008. (DE #92-2, ¶2.) AGCIC also

issued excess insurance policies to Ranburn for the period of December 27, 2005, through December 27, 2008. (*Id.*, ¶3.)

The insuring agreements of the Policies issued by the Insurers are nearly identical and provide in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

(DE #92, ¶3; *see, e.g.,* DE #92-2 at 13 (AGCIC policy); DE #92-4 at 57, 69 (State Auto policy); *see also* DE #28-1 at 26, DE #28-2 at 29 (NIE policies).)

> Duties in the Event of Occurrence, Offense, Claim or Suit
>
> . . .
> c. You and any other involved insured must. . .
>
> (3) Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and . . .
>
> d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(DE #92, ¶3; *see, e.g.,* DE #92-2 at 35 (AGCIC policy); DE #92-4 at 64, 74 (State Auto policy); *see also* DE #28-1 at 6, DE #28-2 at 12 (NIE policies).)

In 2009, Ranburn engaged the environmental consultant Environmental Forensic Investigations, Inc. ("EFI"), to conduct environmental testing at the Site.  EFI determined that onsite

soil and groundwater had been impacted by the release of the dry
cleaning solvent PCE. (DE #92-1 at 21.) EFI reported the release
to IDEM, and IDEM issued a letter on November 4, 2009, requiring
a site investigation to determine the nature and extent of the
impacted soil and water ("*IDEM* suit"). (*Id.*) Ranburn notified
the Insurers of the IDEM suit and requested a defense. (DE #1,
¶19). Ranburn selected its own defense counsel and environmental
consultant EFI to defend the IDEM suit. (*Id.*, ¶23, ¶64.)

State Auto received notice of the IDEM suit on November 17,
2009. (*Id.*) That same day, State Auto issued its reservation of
rights letter to Ranburn, which stated in part:

> State Auto expressly reserves its rights to assert any
> term, provision, condition, limitation and/or exclusion
> contained in any policies of insurance issued by State
> Auto that may be applicable to this claim. Further,
> this letter and any action or inaction taken by State
> Auto shall not be deemed or construed to waive, alter,
> delete or expand any of the terms, conditions,
> provisions, limitations, rights, or limits of coverage
> of State Auto under the policies and does not waive any
> basis that State Auto may have for reserving its rights
> or denying coverage.

(DE #47-1 at 7-8.) NIE received a notice of the IDEM suit from
Ranburn on or about January 14, 2010, and sent its reservation of
rights letter to Ranburn on or about March 8, 2010. (DE #92-3,
¶¶4-5.) NIE's reservation of right letter stated in part:

> [N]othing set forth in this letter should be deemed to
> amount to a waiver on the part of [NIE] to assert the
> applicability of any of the policy provisions, terms,
> definitions or exclusions. [NIE] expressly reserves the
> right to raise any coverage defenses. . . . In addition,

[NIE] is not estopped from asserting any other policy provision to bar or limit coverage for this matter.

(DE #47-1 at 11.) On or about December 21, 2010, AGCIC notified Ranburn that it agreed to provide a defense to the IDEM suit, subject to a reservation of rights. (DE#1, ¶22.) AGCIC's reservation of rights letter stated in part:

> This right of reservation by [AGCIC] is based upon the information that is currently known to us. Should additional information become available, we may amend or withdraw our right of reservation, or decline to afford coverage, if appropriate.
>
> In no event shall any action or inaction taken by [AGCIC] be deemed or construed to waive, alter, delete or expand any of the terms, conditions, provisions or limitations of coverage under the policy. Neither this letter nor any investigation of this matter undertaken by [AGCIC] is intended to waive any rights or obligations of [AGCIC] under any of its policies or law, in connection with the above matters.

(DE #47-1 at 40.) None of the Insureds' reservation of rights letters specifically reserved the right to select the environmental defense team for the Site.

The Insurers did not object to Ranburn's initial retention of EFI, and paid defense counsel's and EFI's fees while they were defending Ranburn with a reservation of rights. (DE #1, ¶¶23-24, 26; DE #92-3, ¶5; DE #92-4, ¶¶9-12.) State Auto and NIE paid their shares of EFI's invoices through March 2016. (DE #92-4, ¶12; DE #42 at 5.)

In February and March 2016, the Insurers accepted full coverage for the IDEM suit and agreed to defend Ranburn without a

reservation of rights. (DE #1, ¶30; DE #92-3, ¶13; DE #92-4, ¶11.)
The Insurers agreed to keep Ranburn's defense counsel engaged on
the case but refused to continue to use EFI as the environmental
consultant. (*Id.*) They warned Ranburn that if it retained an
environmental consultant, any costs associated with that
consultant would be Ranburn's responsibility and would not be paid
or reimbursed. (DE #1, ¶38; *e.g.,* DE #92-4, Ex E.) While Ranburn
has been satisfied with EFI's work (DE #1, ¶29), EFI had
investigated the Site for over six years and charged fees of over
$800,000, but had not yet defined the scope of the contamination.
(DE #92-4, ¶10.) The Insurers suspected that Stephen Henshaw
("Henshaw"), the CEO of EFI, had a financial interest in the Site.
(*Id.*; DE #92, ¶12; DE #1, ¶57.) The entity "3933 Cleveland Street
Partners LLC" ("3933 Cleveland") purchased the Site on May 18,
2015. (DE #92-1, ¶4, Ex. C.) Henshaw admits that 3933 Cleveland
is "related to him" (DE #92-1 at 51), and that entities in which
Henshaw holds a financial interest became the controlling
shareholder of Ranburn and the owner of record of the Site.[1] (DE

---

[1] The Insurers maintain that EFI's or its principal's multiple roles with regard
to the Site and the IDEM suit present a conflict of interest enjoined by 305
IAC § 1-5-5(c), which provides that "[a] licensed professional geologist having
or expecting to have beneficial interest in a property on which the licensed
professional geologist is reporting should disclose the existence of the
interest or expected interest." (DE #91 at 8.) Ranburn asserts that "Mr.
Henshaw is not the licensed professional geologist assigned to this matter, and
at no time during Mr. Henshaw's ownership of certain entities related to the
Site has he been the licensed professional geologist reporting on the Site."
(DE #107 at 5 (citing DE #47-2, ¶2).) Ranburn's citation to the record does
not support this assertion. Regardless, the Court finds that these assertions
are not material for the purposes of the instant motions.

#1, ¶59; *see* DE #92-1 at 51 (admitting Henshaw has a "financial interest in Ranburn")). The Insurers' suspicion was not confirmed until Ranburn filed its Complaint in the instant lawsuit. (DE #92-4, ¶10.) There is no indication in the record that the Insurers attempted to discuss their suspicion with Ranburn or EFI prior to the Complaint being filed.

The Insurers hired Wilcox Environmental Engineering ("Wilcox") to replace EFI as environmental consultant. (DE #92-3, ¶13; DE #92-4, ¶11; DE #92-5, ¶¶7-8). Previously, Wilcox had provided oversight consulting services for the Site under the direction of Ranburn's defense counsel.[2] (DE #92-5, ¶6). Wilcox reviewed EFI's work and prepared to move forward to take over the investigation of the Site. Without Ranburn's consent, Wilcox began communicating with IDEM on the status of the investigation. (*Id.*, ¶10-14; DE #1, ¶34.) As the Site owner, 3933 Cleveland refused to provide Wilcox with access to the Site to conduct the IDEM-required Site investigation. (DE #92-5, ¶¶11-12.) 3933 Cleveland indicated that it would consider Wilcox's presence on the Site, but that Wilcox's activities would be limited to observing EFI's work. (*Id.*, ¶12.) Wilcox has not completed any investigation or remediation associated with the Site, including work on off-site

---

[2] During that time, Wilcox submitted a technical oversight report to Ranburn's defense counsel, noting that it "did not identify work performed to date that would be considered as inappropriate, and all of the data collected contributes in some form to a better understanding of impacts associated with the site." (DE #47-1, ¶¶13-14.)

properties potentially impacted by the migration of contaminants originating from the Site. (DE #1, ¶33.)

In August and September 2016, IDEM issued two "demand for compliance" letters to Ranburn, demanding that Ranburn undertake certain activities at the Site consistent with IDEM's prior directives, and threatening a Commissioner's Order against Ranburn. (DE #92-5, ¶14, Exs. E-F.) To comply with IDEM's demands and avoid an enforcement action, Ranburn asked EFI to complete the work IDEM requested, and EFI subsequently submitted reports to IDEM.[3] (DE #72 at 7 & n.3.) The Insurers refuse to pay for EFI's work.

In July 2016, the City of Gary established Amended Ground Water Ordinance Restricting Usage, Ordinance No. 7930 ("Ordinance"), which prohibits the installation and use of drinking water wells within City limits. (DE #92-4, ¶13, Ex. F.) The Insurers provided the Ordinance to Ranburn's defense counsel in 2017, noting that that it appears to significantly reduce the liability exposure to Ranburn for future responses to IDEM's demands relating to drinking water.[4] (*Id.*, Ex. F.)

---

[3] Ranburn cites EFI reports dated March 1, 2017 (Doc. #80428228), and March 16, 2017 (Doc. #80435831), available via the IDEM website, https://vfc.idem.in.gov/DocumentSearch.aspx. (DE #72 at 7 n.3.) The Court may take judicial notice of public records available on government websites. *See Travelers Cas. & Sur. Co. of Am. v. Consol. City of Indianapolis, Ind.*, No. 1:13-CV-01276-MJD, 2014 WL 5509312, at *2 n.2 (S.D. Ind. Oct. 31, 2014) (collecting cases).

[4] While the Insurers refer to Ordinance No. 7930 as an "Environmental Restrictive Ordinance," or "ERO," they have not produced evidence that this ordinance has

The parties agree that Indiana law governs the coverage obligations arising from the Policies. In Indiana, "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009) (citation omitted). "Under Indiana law, insurance contracts are governed by the same rules of construction as other contracts." *Ind. Funeral Dirs. Ins. Tr. v. Trustmark Ins. Corp.,* 347 F.3d 652, 654 (7th Cir. 2003) (citation omitted). "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning." *Everett Cash Mut. Ins. Co. v. Taylor,* 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted). Where policy language is ambiguous, Indiana courts generally construe it strictly against the insurer and in favor of the insured. *Id.* "[A]n ambiguity does not exist simply because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms." *Empire Fire v. Frierson*, 49 N.E.3d 1075, 1079 (Ind. Ct. App. 2016) (citations omitted).

Here, the Policies explicitly provide that the Insurers have the right and duty to defend the insured, and that no insured will

---

been considered an ERO pursuant to Indiana Code § 13-11-2-71.2. As such, the Court will refer to it as the "Ordinance."

voluntarily assume any obligation or incur any expense without the Insurers' consent. The parties do not dispute that the Policies give the Insurers the right to select defense counsel and the environmental consultant under certain circumstances. It is also undisputed that, after seven years of defending Ranburn under a reservation of rights, the Insurers fully accepted coverage pursuant to the Policies. The Insurers repeatedly state that they have agreed to (1) fully defend Ranburn against the IDEM suit, (2) resolve Ranburn's liability to IDEM, and (3) pay for the necessary cleanup of the Site at no cost to Ranburn. The Insurers agree with Ranburn's selection of defense counsel. The issue is whether the Insurers may replace Ranburn's selected environmental consultant now that they have accepted coverage.

Express Waiver

"[T]he insurer's duty to defend includes the right to assume control of the litigation to allow insurers to protect their financial interest in the outcome of litigation and to minimize unwarranted liability claims." *R.C. Wegman Const. Co. v. Admiral Ins. Co.,* 629 F.3d 724, 728 (7th Cir. 2011) (quoting *Nandorf, Inc. v. CNA Ins. Cos.,* 479 N.E.2d 988, 991 (Ill. Ct. App. 1985)). Ranburn acknowledges that where an insurer agrees at the outset that a claim is covered, it has complete control over the defense of its insured. Here, the Insurers initially agreed to defend Ranburn under a reservation of rights. Ranburn argues that the

Insurers expressly waived the right to select the environmental consultant by not specifically reserving it. "[C]ontractual provisions of an insurance policy may be waived." *Westfield Nat. Ins. Co. v. Nakoa*, 963 N.E.2d 1126, 1132 (Ind. Ct. App. 2012) (citation omitted). "A waiver is an intentional relinquishment of a known right and is a voluntary act." *Tate v. Secure Ins.*, 587 N.E.2d 665, 671 (Ind. 1992).

> Waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract. The conduct of an insurer inconsistent with an intention to rely on the requirements of the policy that leads the insured to believe those requirements will not be insisted upon may be sufficient to constitute waiver. However, mere silence or inaction on the part of an insurer is not sufficient to constitute an express waiver.

*Nakoa,* 963 N.E.2d at 1132 (internal citations omitted). Waiver requires a "distinct act of affirmance." *Am. Family Mut. Ins. Co. v. Kivela,* 408 N.E.2d 805, 811 (Ind. Ct. App. 1980).

According to Ranburn, the Insurers waived their right to select the environmental consultant because they were aware of this right when they issued their reservation of rights letters, but chose not to reserve this right. *See Protective Ins. Co. v. Coca-Cola Bottling Co.--Indianapolis-Inc.,* 423 N.E.2d 656, 661 (Ind. Ct. App. 1981) ("[D]octrines of waiver and estoppel extend to any ground upon which liability can be denied."). The reservation of rights letters do not support Ranburn's assertion that the Insurer's intentionally waived their right to control the

defense. The purpose of a reservation of rights is "to allow the insurer to fulfill the broad duty to defend while at the same time investigating and pursuing the narrower issue of whether indemnification will result." *Wilson v. Cont'l Cas. Co.,* 778 N.E.2d 849, 852 (Ind. Ct. App. 2002) (citation omitted). The Insurers' reservation of rights letters identified potential issues that might allow them to avoid coverage, and agreed to provide a defense pursuant to a reservation of rights. Ranburn does not point to any language in the reservation of rights letters indicating that the Insurers intentionally relinquished their right to control the defense. The letters do not specifically address the right to control the defense. But, as Ranburn acknowledges, "[t]he narrow issue of express waiver of the right to select the defense team is minor compared to the right to deny coverage altogether based on an exclusion." (DE #72 at 11-12.) The Insureds' letters reserve their rights as to such issues in a collective manner.[5] Thus, the Insurers did not intentionally waive their right to control the defense of the IDEM suit.

---

[5]State Auto's reservation of rights letter states in part that it "expressly reserves its rights to assert any term, provision, condition, limitation and/or exclusion contained in any policies of insurance issued by State Auto that may be applicable to this claim." (DE #47-1 at 7-8.) NIE's letter provides that "nothing set forth in this letter should be deemed to amount to a waiver on the part of [NIE] to assert the applicability of any of the policy provisions, terms, definitions or exclusions." (*Id.* at 11.) AGCIC's reservation of rights letter provides that "[i]n no event shall any action or inaction taken by [AGCIC] be deemed or construed to waive . . . any of the terms, conditions, provisions or limitations of coverage under the policy. Neither this letter nor any investigation of this matter undertaken by [AGCIC] is intended to waive

Ranburn argues that the Insurers' blanket reservations did not reserve their right to control the defense. Relying on a footnote in *Armstrong Cleaners, Inc. v. Erie Insurance Exchange,* 364 F. Supp. 2d 797 (S.D. Ind. 2005), Ranburn maintains that the Insurers' argument is contrary to Indiana law. The Court disagrees. In *Armstrong Cleaners*, the insurer had reserved the right to deny coverage on several grounds, and issued a blanket reservation of rights based on any other coverage defense that might become apparent during its investigation. *Id* at 809. In footnote 8, the court noted that "[s]ome authorities have stated that notice to an insured of a reservation of rights is insufficient unless it makes specific reference to the policy defense being relied upon by the insurer." *Id*. at 809 n.8 (citations omitted). But there, the court considered a reservation of the right to assert unidentified defenses, rather than the right to select or control the defense. Moreover, the court went on to cite the Seventh Circuit for the proposition that an insurer's notice that it was proceeding under a "full reservation of all our rights under the policy" was a valid reservation when insurer lacked specific facts of possible defenses to coverage. *Id*. (citing *Northwestern Nat'l Ins. Co. v. Corley*, 503 F.2d 224, 232 (7th Cir. 1974)). The Court is similarly unpersuaded by Ranburn's

any rights or obligations of [AGCIC] under any of its policies. . . ." (*Id*. at 40.)

citation to *Harleysville Lake States Ins. Co. v. Granite Ridge Builders, Inc.,* No. 1:06-CV-397-TS, 2009 WL 857412 (N.D. Ind. Mar. 31, 2009). In that case, the court found estoppel where the insurer's reservation of rights letter "failed to provide sufficient information regarding the Plaintiff's claimed reservation of rights to enable the [insureds] to make an informed decision" because the letter only raised a general question whether the policy afforded coverage, referred only in general terms to an investigation of the matter, and failed to advise regarding conflict of interest issues. *Id.* at \*6. It did not address the reservation of the insurer's right to control the defense.

Ranburn maintains that the Insurers waived the right to select the environmental consultant because they agreed to work with EFI and paid EFI's bills for seven years. But merely paying defense costs while defending under a reservations of rights does not waive an insurer's right to withdraw its reservation of rights. *See United Servs. Auto. Assoc. v. Caplin*, 656 N.E.2d 1159, 1163 (Ind. Ct. App. 1995) (finding insureds "could not have been prejudiced by [insurer's] withdrawal of its initial, gratuitous acceptance of the responsibility to defend" where insurer initially defended under a reservation of rights, and later declined to defend).

Ranburn argues that allowing the Insurers to defend under a reservation of rights, then withdraw the reservation and assume control of the defense "encourages bad-faith behavior and

gamesmanship at the expense of the insured, essentially allowing the Insurers . . . to have their cake and eat it too." (DE #72 at 13.) It cites cases applying law from other jurisdictions to assert that an insurer forfeits the right to control the defense when it decides to defend under a reservation of rights. *See, e.g., Allen v. Bryers*, 512 S.W.3d 17, 32 (Mo. 2016) ("[The insurer] cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend."); *Patrons Oxford Ins. Co. v. Harris*, 905 A.2d 819, 826 (Me. 2006) ("Because Patrons chose to defend Harris under a reservation of rights, it gave up the ability to control Harris's defense."); *Fireman's Fund Ins. Co. v. Waste Mgmt. of Wis., Inc.*, 777 F.2d 366, 369 (7th Cir. 1985) ("where the insurer reserves rights the insurer does not also reserve the exclusive right to select counsel") (applying Wisconsin law). Ranburn also cites a concurring and dissenting opinion in an Indiana Court of Appeals case, which notes that "[a]n insurer who defends an insured under a reservation of rights should not be able to use those policy provisions as both a shield and a sword." *Klepper v. ACE Am. Ins. Co.*, 999 N.E.2d 86, 99 (Ind. Ct. App. 2013) (Crone, J., concurring in part and dissenting in part). These cases are distinguishable because they address an insurer's right to control a defense when it defends under a reservation of rights or refuses coverage. They do not support a holding that,

by initially defending under a reservation of rights and allowing the insured to select its defense team, an insurer intentionally relinquishes its right to control the defense once it accepts coverage.[6] As such, they are unpersuasive. Moreover, courts applying Indiana law have noted that "not every reservation of rights poses a conflict" that would entitle an insured to select its own defense counsel. *Armstrong Cleaners,* 364 F. Supp. 2d at 807. For these reasons, the Court finds that the Insurers did not intentionally relinquish a known right to select the environmental consultant.

<u>Implied Waiver/Estoppel</u>

Ranburn argues that the Insurers impliedly waived, or should be estopped to asserting, their right to select the environmental consultant. "[I]n the law of insurance, the distinction between 'estoppel' and 'implied waiver' is not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms interchangeably." *Tate*, 587 N.E.2d at 671. "[T]he elements of estoppel are the misleading of a party entitled to

---

[6] After the motions were fully briefed, the parties submitted unpublished Indiana trial court decisions in support of their positions. (DE #107, DE #108.) The Court finds the unpublished order in *BAKB, Inc. v. Indiana Insurance Company*, No. 49D14-1701-PL-003568 (Marion Cty. Sup. Ct. Aug. 15, 2017), to be unpersuasive, as the two-page order grants summary judgment in favor of the insured with only cursory analysis and no citation to case law. (DE #107-1.)

rely on the acts or statements in question and a consequent change of position to his detriment." *Id*.

Ranburn maintains that the Insurers led it to believe that they had relinquished their right to select the environmental consultant because the Insurers had accepted EFI as the environmental consultant and paid its fees for seven years. But Indiana courts have found that an insurer's initial agreement to fund an insured's defense does not waive the insurer's right to change its position regarding funding that defense. In *United Services Automobile Association v. Caplin*, 656 N.E.2d 1159 (Ind. Ct. App. 1995), the insurer initially agreed to defend the insureds under a reservation of rights, and the insureds selected their own counsel. The insurer later declined to defend them. The Indiana Court of Appeals held that the insureds "could not have been prejudiced by [an insurer's] withdrawal of its initial, gratuitous acceptance of the responsibility to defend the [insureds]" and therefore, found no waiver or estoppel. *Id*. at 1163.

Ranburn asserts that it was prejudiced by the Insurers' decision to switch from EFI to Wilcox because that decision resulted in delays in responding to the IDEM. In order to avoid a possible IDEM enforcement action and Commissioner's Order, Ranburn claims it was forced to exercise self-help by asking EFI to conduct investigation activities required by IDEM. *See Indiana Ins. Co. v. Ivetich,* 445 N.E.2d 110, 112 (Ind. Ct. App. 1983)

("[W]hen an insurer induces the insured to effect self-help to protect himself, it cannot then hide behind the language of the insurance policy to avoid its duty to defend or insure."). Ranburn has incurred environmental defense costs that the Insurers refuse to reimburse. Ranburn also argues that it has been prejudiced by Wilcox's failure to investigate the off-site risk of contamination migrating from the Site to other properties.

The Insurers insist that Ranburn has not been harmed because they are fully undertaking all of their obligations under the Policies. The Insurers paid Ranburn's defense counsel and EFI while defending under a reservation of rights. After the Insurers agreed to defend without a reservation of rights, they continued to pay Ranburn's counsel, and retained another environmental consultant, Wilcox, to conduct a response action leading to cleanup.[7] The Insurers represent that they have worked and continue to work with Ranburn and its counsel to avoid a possible IDEM enforcement action and Commissioner's Order.

When the Insurers withdrew their reservation of rights, they informed Ranburn that they had retained Wilcox and would not pay for further work by EFI. The Policies provide that no insured will, except at its own cost, voluntarily assume any obligation or

---

[7] To the extent that Ranburn objects to Wilcox, the Insurers offer to work with Ranburn to select a mutually agreeable environmental consultant, provided that the consultant does not have a conflict due to it being owned by the same person who also owns or controls the management of the Site.

incur any expense without the Insurers' consent. Voluntary payment provisions "guard against the problem of moral hazard," where the party taking the risk will not bear the costs of its behavior. *W. Bend Mut. Ins. Co. v. Arbor Homes LLC,* 703 F.3d 1092, 1096 n.2 (7th Cir. 2013) (citation omitted). "[A] voluntary payment provision that clearly prohibits the assumption of financial obligation must be given its plain and ordinary meaning." *Id.* at 1096 (citing *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1271 (Ind. 2009)). Ranburn voluntarily chose to engage EFI, despite the Insurers' warnings that EFI's fees would not be covered by the Policies. Because Ranburn's decision to engage EFI was a voluntary undertaking, it is excluded by the Policies' voluntary payment provisions.

The Court is unpersuaded by Ranburn's claim that the Insurers caused a delay that forced Ranburn to engage EFI. The evidence demonstrates that Wilcox was ready and willing to respond to the IDEM suit, but was unable to do so because the current Site owner – who has common ownership with Ranburn and EFI – refused Wilcox access to the Site. As such, the undisputed facts do not establish sufficient inducement of Ranburn to engage in self-help.

<u>Conflict of Interest</u>

Ranburn argues that a conflict of interest prevents the Insurers from controlling the defense and selecting the defense team, including the environmental consultant. According to

Ranburn, the Insurers' interest in investigating and remediating the Site using the least expensive alternatives conflicts with Ranburn's interest in eliminating third party liability, cleaning up the Site, and remaining on good terms with its neighbors. The Insurers maintain that their interests align with Ranburn's.

Both Ranburn and the Insurers rely upon *Armstrong Cleaners* in support of their positions. 364 F. Supp. 2d 797. In that case, IDEM had notified a building owner that its building violated environmental regulations, and the owner sought contribution from tenants who were operating a dry cleaning business in the building. The tenants' insurer agreed to defend the tenants under a reservation of rights. The tenants sought a declaration that the insurer had to pay for the cost of defense incurred by having the tenants hire an attorney of their choice. The court explained that "[i]n cases where the handling of the underlying litigation may affect whether the claim is covered or not covered, the conflict of interests may be sufficiently clear and immediate that one attorney cannot represent the interests of both the insurer and the insured." *Id.* at 806; *see Snodgrass v. Baize*, 405 N.E.2d 48, 51 (Ind. Ct. App. 1980) (explaining that in such a case, insurer should not defend, but rather, reimburse the insured's personal counsel). The court considered Indiana Rule of Professional Conduct 1.7(a), which provides that "a lawyer shall not represent a client if the representation involves a 'concurrent

conflict of interest.'" *Armstrong Cleaners*, 364 F. Supp. 2d at 807 (quoting Ind. R. Prof. Cond. 1.7(a)(2)). A concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Ind. R. Prof. Cond. 1.7(a)(2). "[T]he potential for conflict requires a careful analysis of the parties' respective interests to determine whether they can be reconciled, or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured." *Armstrong Cleaners*, 364 F. Supp. 2d at 808 (citations omitted).

> Whether the potential conflict of interest is sufficient to require the insured's consent is a question of degree that requires some predictions about the course of the representation. *If there is a reasonable possibility that the manner in which the insured is defended could affect the outcome of the insurer's coverage dispute, then the conflict may be sufficient to require the insurer to pay for counsel of the insured's choice.* Evaluating that risk requires close attention to the details of the underlying litigation. The court must then make a reasonable judgment about whether there is a significant risk that the attorney selected by the insurance company will have the representation of the insureds significantly impaired by the attorney's relationship with the insurer.

*Id.* (emphasis added). The court found that because counsel would be conducting discovery on issues relevant to the underlying suit that would also be relevant to the tenants' coverage dispute with the insurer, there was a significant risk that counsel's ability

-23-

to represent the tenants would be materially limited by counsel's responsibilities to the insurer. Therefore, the tenants were entitled to counsel of their choice subject to reasonable approval by the insurer, with reasonable fees and expenses paid by the insurer. *Id.* at 801.

Ranburn insists that an environmental consultant's relationship with the Insurers creates a significant risk of prejudice to Ranburn because the Insurers are "controlling the purse strings," influencing the risk-based cleanup standards, and have suggested restricting the investigation and cleanup. (DE #104 at 11.) It focuses on Insurers' professed hope that the City of Gary's Ordinance will greatly reduce the amount of off-site investigation, remediation and mitigation necessary at the Site. According to Ranburn, if IDEM determines that the Ordinance protects human health and the environment, and thus, is an Environmental Restrictive Ordinance ("ERO") under Indiana Code § 13-11-2-71.2, it may achieve regulatory closure of the Site even if contaminated groundwater has not been fully remediated. *See* Ind. Code § 13-25-5-8.5(e) (IDEM "shall consider and give effect to" "[EROs] in evaluating risk based remediation proposals"). Ranburn maintains that closure of the Site using an ERO may allow for closure at a lower cost to the Insurers, but may ultimately result in an increased risk for third party claims against Ranburn for property damage and bodily injury as a result of contamination

-24-

remaining on off-site properties. Ranburn asserts that the Insurers have not agreed to defend and indemnify it from these potential third party claims, but rather, limit their agreement to the defense of the IDEM suit. As a result of these conflicting interests, Ranburn insists that any defense team selected and controlled by the Insurers will prejudice Ranburn and materially limit its representation.

Ranburn maintains that its conflict of interests with the Insurers is similar to the one addressed in *Valley Forge Insurance Company v. Hartford Iron & Metal, Inc.*, 148 F. Supp. 3d 743 (N.D. Ind. 2015). In *Valley Forge*, the insurer argued that it should not be precluded from exercising its right to control the defense because it had agreed to pay the cost of defending against the claims in full, and the insurer's chosen defense counsel would have no incentive to defend the claims in any way other than the most meritorious and cost-effective. The court found that the insurer's position viewed the dispute between the parties and the relevant law on conflicts too narrowly. *Id*. at 749. The court considered Rule 1.7, and explained that the insurer had "created a conflict of interest" by filing a breach of contract action against the insured seeking recovery of the same remediation costs the insurer said the insurance policies cover. *Id*. at 751. That conflict prevented the insurer from controlling the defense and remediation as a matter of Indiana law. *Id*. The court also

explained that were the insurer "to exercise control over the remediation despite its lawsuit, it would have an incentive to prioritize fixing things for which it is unquestionably responsible while neglecting necessary work for which it believes [the insured] will ultimately foot the bill—even if doing so exposes [the insured] to a high risk of future enforcement action." *Id.* at 753. Ranburn argues that the Insurers created a conflict of interest by seeking to reduce costs over sound investigation and remediation practices, refusing to conduct required off-site investigations, and refusing to reimburse Ranburn for work conducted by EFI.

The Court finds *Valley Forge* to be distinguishable. Here, the Insurers have acknowledged their obligation to defend and indemnify Ranburn without any reservation of rights, and to pay for the necessary cleanup of the Site at no cost to Ranburn. While NIE and State Auto filed counter claims for declaratory judgment against Ranburn seeking a determination of the parties' rights and obligations under their policies (DE #28, DE #30), *Valley Forge* distinguished these types of claims as not creating a conflict of interest. There, the insurer had sued the insured to recover the same remediation costs it contended were covered by the policies. The court explained that "[h]ad [the insurer] filed suit only for declaratory relief to clarify the parties' obligations, no conflict would exist and [the insurer] would be free to enjoy its

bargained-for right to control the underlying defense to the environmental actions." *Id*. at 753. By seeking a damage remedy for breach of contract, the insurer "effectively forfeited its control rights" because it "in effect disputed its duty to pay for costs associated with the remediation." *Id*. Moreover, in *Valley Forge*, the insured argued that the insurer and its environmental consultant were responsible for the contamination. Here, there is no evidence that the parties dispute who is responsible for the contamination.

Based on the evidence before it, the Court does not find a significant risk that the Insurers' relationship with their selected environmental consultant will significantly impair Ranburn's representation. There is no dispute as to coverage; the Insurers have agreed to fully defend Ranburn against the IDEM suit, resolve Ranburn's liability to IDEM, and pay for the necessary cleanup of the Site at no cost to Ranburn. Ranburn does not designate any evidence from its defense counsel indicating that counsel believes that selecting environmental consultant other than EFI will materially limit the defense of the IDEM suit. The Insurers acknowledge that they have a financial interest in the outcome of the IDEM suit, but courts have recognized that providing insurers the right to control the litigation allows "insurers to protect their financial interest in the outcome of litigation." *R.C. Wegman,* 629 F.3d at 728. While Ranburn makes much of the

Ordinance proposed by the Insurers, the Insurers will not have full control of the remediation of the Site. Rather, IDEM must approve the methods used to remediate the Site, and IDEM has the authority to decide whether and to what extent the Ordinance influences the remediation of the Site. (*See* DE #105-1 at 153 (IDEM Remediation Closure Guide, providing that "IDEM will thoroughly evaluate EROs proposed as a component of a remedy" "on a case-by-case basis and . . . according to the facts at each site"). While Ranburn argues that it may be exposed to third party claims if the Insurers are allowed to change environmental consultants, it proffers no evidence to support this argument. In addition, "[a] person who implements or completes an approved response action . . . may not be held liable for claims or contribution concerning matters addressed in the response action." Ind. Code § 13-25-4-27(b). Because parties who complete a response action are afforded certain immunities from third party claims, the parties here presumably share an interest in resolving the IDEM suit. For these reasons, the Court does not find a significant risk that Ranburn's representation will be materially limited by the environmental consultant's responsibilities to the Insurers. Thus, Ranburn does not have the right to engage EFI at the expense of the Insurers.

CONCLUSION

For the reasons set forth above, Ranburn's motion for partial summary judgment (DE #71) is **DENIED** and State Auto's, AGCIC's, and NIE's cross-motions for partial summary judgment (DE #90, DE #93, and DE #94) are **GRANTED**. The Clerk of the Court is **DIRECTED** to enter a **DECLARATORY JUDGMENT** in favor of defendants AGCIC, NIE and State Auto declaring that AGCIC, NIE and State Auto have the right to select and retain the environmental consultant to assist in the defense of the underlying IDEM suit and conduct the response action at no cost to Ranburn.


**DATED:  March 28, 2018**          **/s/ RUDY LOZANO, Judge**
                                    **United States District Court**