UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| RANBURN CORPORATION d/b/a RANBURN CLEANERS,<br>　　　　Plaintiff,<br><br>　　v.<br><br>ARGONAUT GREAT CENTRAL INSURANCE COMPANY, et al.,<br>　　　　Defendants.<br>_____<br><br>NATIONAL FIRE AND INDEMNITY EXCHANGE<br>　　　　Cross-Claimant,<br><br>　　v.<br><br>RANBURN CORPORATION d/b/a RANBURN CLEANERS<br>　　　　Counterclaim Defendant<br>_____<br><br>MERIDAN MUTUAL INSURANCE n/k/a STATE AUTO INSURANCE COMPANIES<br>　　　　Counter-Claimant<br><br>　　v.<br><br>RANBURN CORPORATION d/b/a RANBURN CLEANERS<br>　　　　Counterclaim Defendant | Civil Action No. 4:16-cv-00088-RL-PRC |

### **REQUEST FOR JUDICIAL NOTICE**

　　Pursuant to Federal Rule of Evidence 201, Meridian Mutual Insurance Companies, n/k/a State Auto Insurance Companies, by counsel, respectfully requests that this Court take judicial

1

notice of the following document, which is not subject to reasonable dispute because it is from a source that cannot reasonably be questioned.

1. December 20, 2017 Order Granting Plaintiff's Motion for Prejudgment Attachment, filed in *WNIN Tri-State Public Media, Inc. v. Daniel Korb Laundry Co., Inc., et al*, Vanderbugh Superior Court Cause No. 82D07-1708-PL-4163.

A true and correct copy of this document is attached hereto as Exhibit "A."

Respectfully submitted,

*/s/ Erik S. Mroz*
David A. Temple # 18193-49
Erik S. Mroz #29785-49
Alyssa C. Hughes #34645-71
*Attorney for Defendant Meridian Mutual Insurance Companies n/k/a State Auto Insurance Companies*

DREWRY SIMMONS VORNEHM, LLP
Carmel City Center
736 Hanover Place, Suite 200
Carmel, IN 46032
(317) 580-4848
(317) 580-4855 (fax)
emroz@DSVlaw.com
dtemple@DSVlaw.com
ahughes@DSVlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing document was served upon the following by operation of the Court's electronic filing system this 25th day of July, 2018. Parties may access this filing through the Court's system:

| | |
|---|---|
| Brent W. Huber/Amy S. Berg<br>Ice Miller LLP<br>One American Square, Suite 2900<br>Indianapolis, In 46282-0200<br>amy.berg@icemiller.com<br>brent.huber@icemiller.com<br><br>*Attorneys for Plaintiff, Ranburn Corporation*<br>*d/b/a Ranburn Cleaners* | Dennis F. Cantrell/Ian P. Goodman/<br>Katherine L. Shelby<br>Cantrell Strenski & Mehringer, LLP<br>150 West Market Street, Suite 800<br>Indianapolis, Indiana 46204<br>dcantrell@csmlawfirm.com<br>igoodman@csmlawfirm.com<br>kshelby@csmlawfirm.com<br><br>*Attorneys for Defendants Argonaut Insurance*<br>*Company and Argonaut Great Central Insurance Company* |
| Gregory J. Tonner<br>Moore & Portelli<br>1449 East 84th Place<br>Merrillville, IN 46410<br>gtonner@mooreandportelli.com<br><br>*Attorney for Defendant, National Fire & Indemnity Exchange* | |

                                                                           /s/Erik S. Mroz_____
                                                                            Erik S. Mroz

DREWRY SIMMONS VORNEHM, LLP
Carmel City Center
736 Hanover Place, Suite 200
Carmel, IN 46032
(317) 580-4848
(317) 580-4855 (fax)
emroz@DSVlaw.com
dtemple@DSVlaw.com
ahughes@DSVlaw.com

## *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE VANDERBURGH SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF VANDERBURGH | ) | CAUSE NO. 82D07-1708-PL-4163 |

WNIN TRI-STATE PUBLIC MEDIA, INC., )
)
    Plaintiff, )
)
v. )
)
DANIEL KORB LAUNDRY CO., INC. )
d/b/a PEARL LAUNDERERS & CLEANERS )
and )
BERNARD MICHEL, )
)
    Defendants. )

VANDERBURGH SUPERIOR COURT
**FILED**
DEC 2 0 2017
*[signature]*
CLERK

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PREJUDGMENT ATTACHMENT

**I.**     **DISCUSSION (ALL FACTUAL FINDINGS ARE ONLY PRELIMINARY FINDINGS)**

**A. Prejudgment Attachment (Ind. Code. § 34-25-2-1).**

Defendant, Daniel Korb Laundry, Inc. d/b/a Pearl Launderers ("Pearl"), is likely responsible for an environmental spill which also contaminated the adjoining property of Plaintiff, WNIN Tri-State Public Media ("WNIN"). However, the occurrence-based insurance policies owned by Pearl are likely adequate to cover the cost of clean-up. Therefore, this would appear to be a rather simple case.

Notwithstanding, in comes Red Ink, LLC ("Red Ink"), which purports to have procured the assignment of Pearl's insurance claims. Here, the waters get a bit murky because the attorney who represented Pearl at the hearing also seemed to represent Red Ink. But the evidence is Pearl received nothing in exchange for the purported assignment of its insurance

EXHIBIT "A"

1

claims to Red Ink, and when Pearl's/Red Ink's attorney was asked what consideration there was to support said assignment, his response was that, in exchange, Red Ink would indemnify Pearl up to the policy limits. This Court preliminarily finds that this is no consideration at all because the insurance policies already served to indemnify Pearl up to the policy limits. And while Pearl did not receive any consideration in exchange for the purported assignment of the insurance claims, it most certainly gave something up – as it essentially traded an indemnity backed by insurance companies with solid financial footing for an indemnity backed by a single-use LLC with no other assets. And this distinction is particularly meaningful if Red Ink's business model is to settle claims for less than the policy limits in speculation that it might be able to conduct the clean-up for less than said settlement amount (or else file bankruptcy). Which brings this Court to its next finding: In addition to Pearl failing to articulate a legitimate business purpose for the purported assignment of the insurance claims to Red Ink, Red Ink has failed to articulate a legitimate business purpose for receiving said assignment. When this Court asked Pearl's/Red Ink's attorney what Red Ink's business model was (i.e., how it made its money), he coyly replied Red Ink was "still working on that."

In conclusion, from the evidence presented to this Court at the hearing for prejudgment attachment, this Court must draw the reasonable inference that defendants:

(5) has sold, conveyed, or otherwise disposed of the defendant's property subject to execution, or permitted the property to be sold with the fraudulent intent to cheat, hinder, or delay:
    (A) the defendant's creditors;
    (B) the state;
    (C) a municipal corporation;
    (D) a political subdivision; or
    (E) a school corporation (as defined in IC 20-18-2-16(c)); or

(6) is about to sell, convey, or otherwise dispose of the defendant's property subject to execution with the fraudulent intent to cheat, hinder, or delay:
    (A) the defendant's creditors;

      (B) the state;
      (C) a municipal corporation;
      (D) a political subdivision; or
      (E) a school corporation (as defined in IC 20-18-2-16(c)).

Ind. Code. § 34-25-2-1(b).

This Court further preliminarily finds that, because the purported 2016 assignment of the insurance claims to Red Ink fail as a matter of law for lack of consideration, Pearl still owns the claims against the insurance companies under the policies. But in the alternative, this Court preliminarily finds the insurance claims are subject to attachment because, from the evidence presented to this Court at the hearing for prejudgment attachment, this Court must draw the reasonable inference that Red Ink has participated in the fraud. *Johnston v. Field*, 62 Ind. 377, 381 (Ind. 1878).[1] Notwithstanding, neither of these <u>preliminary</u> findings affect Red Ink's ability to assert its rights under Ind. Code § 34-25-2-13. *Risher v. Gilpin*, 29 Ind. 53, 56 (Ind. 1867).

> A determination of fraudulent intent in these transfers is also supported through application of the common law badges of fraud. Fraudulent intent may be inferred from various factors present in a given transaction, which include:
>
> 1. transfer of property by a debtor during the pendency of a suit;
>
> 2. transfer of property that renders the debtor insolvent or greatly reduces his estate;
>
> 3. a series of contemporaneous transactions which strip a debtor of all property available for execution;
>
> 4. secret or hurried transactions not in the usual mode of doing business;
>
> 5. any transaction conducted in a manner differing from customary methods;

---

[1] WNIN brought this action for prejudgment attachment to prevent Pearl from fraudulently assigning, selling, or liquidating the insurance policies. It was not until shortly before the prejudgment attachment hearing (and well after the briefings on this matter) that Pearl finally revealed to WNIN that it purportedly assigned the insurance claims to Red Ink in 2016. Nevertheless, Pearl apparently provided Red Ink with sufficient notice of the hearing (as Pearl's change-of-counsel represented both Pearl and Red Ink). Notwithstanding, notably absent from the evidence, neither Pearl nor Red Ink provided WNIN (or this Court) with a copy of any contract or agreement between Pearl and Red Ink effectuating the purported 2016 assignment of the insurance claims, nor was either able to articulate a legitimate business purpose for the purported 2016 assignment.

3

      6. a transaction whereby the debtor retains benefits over the transferred property;

      7. little or no consideration in return for the transfer; and

      8. a transfer of property between family members.

*Greenfield v. Arden Seven Penn Partners, L.P.*, 757 N.E.2d 699, 704 (Ind. Ct. App. 2001), *trans. denied.* "As no single indicium constitutes a showing of fraudulent intent per se, the facts must be taken together to determine how many badges of fraud exist and if together they amount to a pattern of fraudulent intent." *Otte v. Otte*, 655 N.E.2d 76, 81 (Ind. Ct. App. 1995), *trans. denied.*

*Commer. Credit Counseling Servs. v. W.W. Grainger, Inc.*, 840 N.E.2d 843, 852 (Ind. Ct. App. 2006).

    In this case:

1. Although this purported assignment occurred before this lawsuit was actually filed, it is clear it occurred in anticipation of this lawsuit;

2. Pearl has closed its laundry business and is in the process of selling off its assets, thus greatly reducing its estate;

3. Again, Pearl has closed its laundry business and is in the process of selling off its assets, thus stripping it of all assets available for execution;

4. This purported assignment was conducted in secret – in fact, neither Pearl nor Red Ink notified WNIN of this transaction until shortly before the hearing (and well after the briefings on this matter);

5. The manner of this transaction differs from customary methods;

6. Because Red Ink promised to indemnify Pearl up to the policy limits, Pearl effectively retained all benefits over the transferred property. *See also, Id.* ("The seeping back of the transferred money or property to the transferor is strong evidence of actual fraud . . .");

7. There was little or no consideration for the transfer; and

4

    8. Although Pearl and Red Ink are not family members, it is worth noting this Court asked questions to try and get to the heart of what Pearl and Red Ink's relationship actually was – questions which they seemed to side-step as they were purportedly "still working on that."

**B. Supporting Affidavit (Ind. Code § 34-25-2-4).**

Pearl may be arguing in its *Response to WNIN's Motion for Prejudgment Attachment* that no attachment can be issued because WNIN's affidavit does not meet the requirements of Ind. Code § 34-25-2-4. Pearl never filed a motion to quash the motion for prejudgment attachment and thus may have waived the argument, but in any event, it is undisputed the affidavit shows:

    (1) the nature of the plaintiff's claim;
    (2) that the plaintiff's claim is just; and
    (3) the amount that the plaintiff ought to recover.

Therefore, the only question would be whether the affidavit sufficiently shows:

    (4) that one (1) of the grounds for an attachment enumerated in section 1 [IC 34-25-2-1] of this chapter is present.

Ind. Code § 34-25-2-4.

In this case, the affidavit explicitly alleges that: WNIN has an environmental claim against Pearl for which Pearl owes WNIN in excess of One Hundred Thousand Dollars ($100,000); that Pearl has insurance policies which will cover said claim; but that Pearl is nonetheless in the process of winding down its business and selling off its assets, including potentially selling, assigning, or liquidating said insurance policies. Normally, when a business is embroiled in litigation, the last thing that business would want to do is sell, assign, or liquidate insurance policies which would provide indemnification against said lawsuit. Therefore, given the facts of this case, it is abundantly clear that WNIN's affidavit, even when viewed in isolation, is implicitly alleging that the sale, assignment, or liquidation of said insurance policies is done

5

with a fraudulent intent to cheat, hinder, or delay – thus, showing that the grounds for an attachment pursuant to Ind. Code §§ 34-25-2-1(b)(5) or (6) are present. Furthermore, the accompanying *Motion for Prejudgment Attachment* explicitly cites Ind. Code § 34-25-2-1(b)(5) and explicitly uses the phrase "fraudulent intent to cheat, hinder, or delay." *See United States Capsule Co. v. Isaacs*, 23 Ind. App. 533, 538 (Ind. Ct. App. 1899)("[R]eference may be had to the petition to ascertain the precise nature of the plaintiff's claim."). Therefore, this Court finds that the affidavit was not defective.

But even if the affidavit were defective and the argument has not been waived, "taking the entire affidavit into consideration, [this Court] cannot regard the defect as one which could prejudice the substantial rights of [Pearl]." *Fairbanks v. Lorig*, 4 Ind. App. 451, (Ind. Ct. App. 1892); *See also, United States Capsule Co. v. Isaacs*, 23 Ind. App. 533, 539 (Ind. Ct. App. 1899) ("[W]hile the affidavit which is the basis of an attachment proceeding must show the facts required by statute, that where such affidavit is not so defective as to prejudice the substantial rights of the defendant, the writ of attachment will not be quashed."). In this case, it is abundantly clear from Pearl's *Response to WNIN's Motion for Prejudgment Attachment*, that Pearl knew WNIN's affidavit was alleging the transfer was conducted with "fraudulent intent" and that WNIN's alleged grounds for attachment were Ind. Code §§ 34-25-2-1(b)(5) and (6). Furthermore, having actual notice of WNIN's claim, Pearl had every opportunity to come to the subsequent prejudgment attachment hearing and submit its evidence that the purported assignment was not fraudulent. Instead, Pearl decided to come into the hearing playing "hide the ball," unable or unwilling to articulate a legitimate business purpose for the purported assignment and never offering into evidence a copy of any contract or agreement between Pearl and Red Ink effectuating the purported 2016 assignment.

### C. Sufficient Surety (Ind. Code § 34-25-2-5).

This Court agrees with Pearl that WNIN is not exempt from the "sufficient surety" requirement of Ind. Code § 34-25-2-5, but this Court finds that Pearl has failed to put forth evidence quantifying the "damages that may be sustained by [it] if the proceedings of the plaintiff are wrongful and oppressive." *Id.*

The damages available consist of two elements: damages for expenses incurred in defending against the attachment proceeding and damages for injury to or loss of the property once it is seized." *Ashland Oil, Inc. v. Arnett*, 496 N.E.2d 1313, 1320 (Ind. Ct. App. 1986), *transferred*, 507 N.E.2d 561, 1987 Ind. LEXIS 921 (Ind. 1987). Additionally, "damages" may also include reputational damages. *Chrysler Motors Corp. v. Graham*, 631 N.E.2d 7, 9 (Ind. Ct. App. 1994).

This Court finds that Pearl has failed to put forth any evidence quantifying the "damages that may be sustained by [it] if the proceedings of the plaintiff are wrongful and oppressive." Ind. Code § 34-25-2-5. Pearl has never cited reputational damages or damages incurred in defending against the attachment proceedings, although some damages presumably exist. And with respect to Pearl's argument that it is "damaged" because it loses its ability to assign its insurance claims to Red Ink, this Court finds it extremely difficult to quantify said "damages" absent any evidence supporting such a quantification, especially considering Pearl was unable to articulate *any benefit at all* it derived from said purported assignment.

Finally, it is worth noting that if WNIN's underlying lawsuit is "wrongful and oppressive" (i.e., if Pearl were ultimately adjudicated NOT responsible for the contamination of WNIN's property), then the insurance claims attached by this Order would be unmeritorious, and thus have little or no value; The only way the insurance claims attached by this Order have great

7

value is if Pearl were responsible for the contamination – in which case the proceeds from the insurance claims attached by this Order should be used to pay for the clean-up.[2]

In conclusion, pursuant to Ind. Code § 34-25-2-5, this Court hereby orders Plaintiff, WNIN Tri-State Public Media, Inc., to post a surety in the amount of Ten Thousand Dollars ($10,000).

### D. Property Subject to Execution

Pearl did not raise issue with whether ownership of the claims under the insurance policies constitute "property subject to execution." However, this Court finds it necessary to make it abundantly clear that the only property being attached is the claim against the insurance companies' duty to indemnify Pearl up to the policy limits, and NOT the assignment of the insurance companies' duty to defend Pearl or the assignment of any claim Pearl might have against the insurance companies in excess of the policy limits. *State Farm Mut. Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021 (Ind. 2007); *See also, Seider v. Roth*, 17 N.Y.2d 111, 112 (N.Y. Ct. App. 1966).

## II. ORDER OF ATTACHMENT

It is **therefore ORDERED, ADJUDGED AND DECREED** that, pursuant to Ind. Code § 34-25-2-5, Plaintiff, WNIN Tri-State Public Media, Inc., shall post a surety in the amount of Ten Thousand Dollars ($10,000).

---

[2] Although not relevant to this Court's legal analysis, the contaminated properties-in-question contain structures which many would cherish for their historical attributes.

8

It is **further ORDERED, ADJUDGED AND DECREED** that, upon the posting of said surety, Plaintiff, WNIN Tri-State Public Media, Inc., is hereby granted prejudgment attachment, pursuant to Ind. Code. § 34-25-2 *et seq.*, of those claims against the insurance companies' duty to indemnify under the policies owned by Defendant, Daniel Korb Laundry, Inc. d/b/a Pearl Launderers, which may provide coverage for the claims of Plaintiff – including prejudgment attachment on the rights and interests thereto and on the proceeds thereof.

It is **further ORDERED, ADJUDGED AND DECREED** that Defendant, Daniel Korb Laundry, Inc. d/b/a Pearl Launderers, shall serve a copy of this Order upon non-party Red Ink, LLC, unless Red Ink provides a written and signed waiver of said service.

**So ORDERED, ADJUDGED AND DECREED** this __20th__, day of December, 2017.

Hon. Richard G. D'Amour, Judge
Vanderburgh Superior Court

**Distribution:**

Michael E. Dirienzo, Esq.
George Michael Schopmeyer, Esq.
Kahn, Dees, Donovan & Kahn
P.O. Box 3646
501 Main St., Ste. 305
Evansville, IN 47708

Justin Gifford, Esq.
ATTN: Environmental Forensics Investigations, Inc.
602 N. Capital Avenue,
Suite 210
Indianapolis, IN 46204

9